**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 96-30356
_____

In The Matter of: GNR PRODUCTION SERVICES INCORPORATED

Debtor.
_____

GNR PRODUCTION SERVICES, INC.,

Appellant,

VERSUS

HENRY AUDELL DAVIS, MARTHA WILSON DAVIS,
AND MELBA DAVIS VAUGHN,

Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(95-CV-2156)
_____

May 20, 1997

Before KING, JOLLY and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[1]

Appellant GNR Production Services, Inc. ("GNR") appeals a directed verdict in bankruptcy court dismissing its claims against Appellees Henry Davis, Martha Davis, and Melba Davis Vaughan (collectively, the "Davises"). GNR asserts that the court erred in failing to apply the doctrine of _res judicata_ to an earlier

_____

[1] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1

proceeding between the parties in Louisiana state court. Because we find that the earlier disposition was not final, and therefore not entitled to preclusive effect, we affirm.

**Facts and Proceedings Below**

In 1981, the Davises leased a tract of land to ROJO Oil Company, Inc. ("ROJO"). The area contained a "dry hole" due to a prior unsuccessful drilling attempt, and ROJO desired to use the land for a salt water injection disposal operation. The lease granted ROJO the rights to the land for one year with a renewal option for twenty consecutive one year terms. The lease also provided that ROJO enjoyed the right to assign or sublet the lease and stated that "the lessee may not be evicted until twenty (20) days after the lessors shall have posted notice to the lessee."

When the lease was executed, ROJO was owned by Ron Haughton and Joe Collins. In 1985, Collins decided to end his association with ROJO and sold his interest to Haughton. ROJO continued to run the operation until sometime in 1988, when it is asserted by the appellant that Ron and his wife Gail, an officer of ROJO, transferred ROJO's salt water operations to GNR (formerly, Ron Haughton, Inc.). At the time, Ron and Gail were the sole shareholders in both ROJO and GNR. During this same period, ROJO filed for Chapter 11 protection, but the case was eventually dismissed and closed.

In 1992, the Davises, concerned that the rents being paid on

the property were insufficient, attempted to obtain an accounting. They were unable to do so, and as a result, the Davises filed suit on March 1, 1994, in Louisiana state court.  Alleging unpaid rents, the Davises sought both cancellation of the lease and eviction. The Davises also requested a writ of sequestration which was granted by the court the same day.  *See* La. Code Civ. Proc. art. 3571.  GNR filed a dilatory exception of prematurity to the writ of sequestration based on the provision of the lease entitling leasees to 20 days notice prior to any eviction.  The trial court denied the exception on April 13, 1994.  GNR appealed, and a Louisiana court of appeals vacated the ruling and remanded for further proceedings.  The district court then held a hearing on the matter and on October 17, 1994, signed an order sustaining the exception of prematurity and dismissing the writ of sequestration.

This order concluded the proceedings in state court because, on November 8, 1994, GNR filed for Chapter 11.  By doing so, GNR automatically stayed any further state court action, 11 U.S.C. § 362, and not until January of 1995 did litigation between the parties resume.  It was then that GNR filed an adversary proceeding in bankruptcy court to recover money damages for what it considered the wrongful sequestration of the leased property.  The Davises counterclaimed, seeking the same relief outlined in their original state court action.[2]  Following GNR's presentation of its case in

---

[2]    The pleading of the state court causes of action as counterclaims is characterized by the Davises as having "in

chief, the Davises moved for a directed verdict.  The court granted

the motion and dismissed all of GNR's claims in an order signed

September 22, 1995.  In addition, the court ruled that, based on

the 1988 ROJO bankruptcy filing, GNR had no right of possession of

the disputed property.  The district court affirmed the decision,

and after moving for a new trial, GNR filed a timely appeal.  GNR's

sole point of contention on appeal is that the bankruptcy court was

required to accord *res judicata* effect to the October 17 state

court ruling which sustained GNR's exception of prematurity to the

Davises' writ of sequestration.[3]

### Jurisdiction

This court will *sua sponte* consider threshold jurisdictional

questions.  *Click v. Abilene Nat'l Bank*, 822 F.2d 544, 545 (5th

Cir. 1987).  We note that we have jurisdiction "'only if the

underlying bankruptcy court order was final.'" *In re First*

essence" effectuated a removal of the state court case.  This
unorthodox procedure occurred, at least in part, as a concession to
GNR, who asserted that it would be subject to financial ruin in the
time required to bring the case up from state court. Therefore all
parties agreed to expedite the case by circumventing the demands of
formal removal.  The bankruptcy judge stated that the case was "for
this Court's purposes a removed lawsuit."  The Davises argue that
this fact necessitates a finding that the bankruptcy court was free
to reassess the state court judgment under 28 U.S.C. § 1450.
However, whether this "removal" should be treated as one for the
purposes of resolving the preclusive effect of the state court
judgement need not be reached here.

[3] Although precisely what issues GNR briefed to this court is
unclear, counsel at oral argument clarified that the only assigned
error relates to the failure of the bankruptcy court to apply *res
judicata*.

*Financial Development Corp.*, 960 F.2d 23, 25 (5th Cir. 1992)(quoting *In re Delta Serv. Indus.*, 782 F.2d 1267, 1268 (5th Cir. 1986)); *see also* 28 U.S.C. § 158(d). Here, the bankruptcy court entered a directed verdict regarding only GNR's claims, and GNR appealed before the court ever ruled on the Davises' counterclaims. However, despite the fact that a substantial portion of the case remained unresolved at the time the notice of appeal was filed, this court can exercise jurisdiction due to the bankruptcy court proclaiming that its "final judgment" was entered "pursuant to F.R.C.P. 54(b)."[4]

## Standard of Review

Through the bankruptcy appellate process, this court is in the atypical position of providing the parties with a second round of review. Our method of review, however, remains pedestrian -- we perform the identical function as the district court, reviewing the bankruptcy court's finding of fact for clear error and decide issues of law *de novo*. *In re Kemp*, 52 F.3d 546, 550 (5th Cir. 1995). A bankruptcy court's decision to give preclusive effect to

---

[4] Rule 54(b) provides that "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims." Fed. R. Civ. P. 54(b). *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990)(en banc)(determining that all that is needed to invoke Rule 54 is a clear intent to enter a partial final judgment under it); Bankruptcy Rule 7054(a)(stating that Rule 54(b) "applies in adversary proceedings").

a state court judgment is a question of law. *In re Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996).

## Analysis

The doctrine of *res judicata*, by reducing redundancy and fostering confidence in judicial dispositions, assists in the administration of an efficient system of justice. In addition, it promotes "comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Although federal courts look to common law principles of preclusion in order to examine the effect of other federal court decisions, Congress has specifically spoken to the manner in which a federal court weighs an earlier state court ruling. The full faith and credit statute requires that "judicial proceedings . . . shall have the same full faith and credit in every court within the United states . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. As emphasized by the Supreme Court:

> It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.

*Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481-82 (1982)(citations omitted). The statute applies with equal force in bankruptcy proceedings. *In re Garner*, 56 F.3d 677, 679 n.2 (5th

6

Cir. 1995). We must therefore look to the law of the state of Louisiana to determine the effect, if any, of the judgment in question.

In Louisiana, *res judicata* will only apply to a "valid and final judgment." La. Rev. Stat. Ann. § 13:4231. Whether a judgment is final is established by reference to the state Code of Civil Procedure -- "[a] judgment that determines the merits in whole or in part is a final judgment." La. Code Civ. Proc. art. 1841. In contrast, "[a] judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment." *Id*.

Not only is the October 17 order dismissing sequestration clearly a preliminary matter, but a number of Louisiana courts, when ruling as to whether or not an order dismissing sequestration is appealable, explicitly refer to such matters as interlocutory. *See, e.g., Commercial Sec. Co. v. Mattingly*, 26 So. 2d 37, 41 (La. Ct. App. 1946); *see also Schwan v. Schwan*, 27 So. 678 (La. 1900)(determining whether an "interlocutory" order setting aside sequestration caused irreparable harm and was therefore appealable); *cf. Smith v. Utility & Maintenance Contractors of America, Inc.*, 301 So. 2d 906, 908 (La. Ct. App. 1974)(citing cases for the proposition that "a judgment denying a motion to dissolve a writ of attachment or sequestration is an interlocutory judgment which . . . is not appealable").

7

GNR does not cite any persuasive authority to the contrary, and its reliance on *Smith* is misplaced. *Smith* stands only for the proposition that a judgment *rejecting a claim for damages* regarding the wrongful issuance of a writ of attachment is a final judgment. *Smith*, 301 So. 2d at 909. In fact, the defendant in *Smith* "concede[d] the interlocutory nature of [the] portion of the judgment overruling the motion to dissolve." *Id*. at 908. Because GNR's bankruptcy action was the only proceeding intended to address the losses associated with what it considered a wrongful sequestration, there is nothing contained in the state court judgment that falls within the *Smith* framework. *See also In re Hornsby & Landry*, 559 So. 2d 863, 864 (La. Ct. App. 1990)(stating a rationale identical to *Smith*).

Similarly, there is no basis for concluding that the October 17 order acquired the authority of a "thing adjudged." Under Louisiana law, once a judgment attains this authority, no court has jurisdiction to alter it "regardless of the magnitude of the final judgment's error." *Avenue Plaza, L.L.C. v. Falgoust*, 676 So. 2d 1077, 1079 (La. 1996)(citation omitted). However, the Civil Code makes clear that for a court's disposition become a thing adjudged, it must first have been "decided by a final judgment." La. Civ. Code art. 3506(31). As noted above, the order here is unquestionably interlocutory.

Furthermore, we find no support for GNR's contention that the

8

Davises' failure to timely file a Motion for Abstention and Motion to Lift Stay in bankruptcy court converted the interlocutory order into one that is "final and definitive." Our analysis is driven by the clear wording of § 1738 which requires that we apply Louisiana law in order to ascertain the preclusive effect of Louisiana judgments. Accordingly, the October 17 ruling remains interlocutory regardless of the Davises' actions in bankruptcy court.

## Conclusion

For the foregoing reasons, the bankruptcy court did not err in refusing to apply *res judicata* to the state court decision to dismiss sequestration, and we AFFIRM the ruling of the court dismissing GNR's claims.